**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Richaed Kinzel, et al.                                          Case No. 3:10CV2169

        Plaintiffs

    v.                                                                      **ORDER**

Merrill Lynch Bank U.S.A., et al.

        Defendants

This is a dispute over liquidation of collateral that secured a loan.

On April 15, 2008, plaintiffs Richard Kinzel and Judith Kinzel took out a loan with defendant Merrill Lynch Bank U.S.A. ("Merrill Lynch Bank"), using as collateral stock in Cedar Fair LLC, which they held in accounts with Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch Bank & Trust Company (collectively "Merrill Lynch").

The Kinzels claim that Merrill Lynch wrongfully sold their pledged collateral in breach of their "Loan Management Account Agreement" (Agreement). Their second amended complaint asserts six claims against Merrill Lynch: 1) breach of contract – violation of the duty to act with good faith and fair dealing; 2) outrageous conduct; 3) conversion; 4) unjust enrichment; 5) estoppel; and 6) fraud.

Jurisdiction is proper under 28 U.S.C. § 1332.

Pending is defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). [Doc. 41]. For the reasons discussed below, defendants' motion is granted in part and denied in part.

**Background**

1

Plaintiffs' Agreement with Merrill Lynch required the value of the collateral to remain above a designated level (the "Maintenance Requirement"). The Agreement gave exclusive discretion to Merrill Lynch to determine whether the collateral met this requirement.

The Agreement also stated that Merrill Lynch could call the loan at any time – likewise at its sole discretion. It also granted several remedies to Merrill Lynch. Among these were a demand for immediate repayment and liquidation of pledged collateral.

Under the Agreement, Merrill Lynch could implement the remedies in response to a "triggering event" or at any time. Among the triggering events was a decline in the value of the collateral below the Maintenance Requirement.

The Kinzels made regular payments on the loan throughout 2008 and early 2009. In February or March, 2009, Merrill Lynch Bank notified the Kinzels that at some future date it would call the loan. The Kinzels allege that they repeatedly told Merrill Lynch not to sell their Cedar Fair stock. The Kinzels also allege that Merrill Lynch assured them they would not sell the Cedar Fair stock so long as they were able to continue to pay down the balance of the loan.

By the end of February, 2009, the value of the pledged collateral had dropped below the Maintenance Requirement. On March 3, 2009, Merrill Lynch sold 167,900 shares of Cedar Fair stock from the Kinzels' securities accounts. Merrill Lynch Bank applied the proceeds of $1,071,291.39 to the Kinzels' loan balance.

Defendants argue that plaintiffs have failed to state claims on which they can obtain relief and, alternatively, plead their claims with sufficient particularity.

**Standard of Review**

A claim survives a motion to dismiss under Rule12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Id.* at 555–56.

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*,    U.S.   ,   , 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, 550 U.S. at   , 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Choice of Law

Plaintiffs and defendants both point out that the Agreement from which the breach of contract claims arise designates Utah law as controlling. A federal court sitting in diversity must apply the choice-of-law principles of the forum state. *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). Ohio courts have adopted the Restatement of Law 2d, Conflicts of Law in dealing with choice-of-law issues with regard to contractual claims. *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438-39 (Ohio 1983). The Restatement, § 187, states:

3

> [The] law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Merrill Lynch Bank appears to have been based in Salt Lake City, Utah, at the time of the Agreement [Doc. 1, Exh. 1, p. 13]. This suffices to give rise to a "substantial relationship." *Schulke*, 6 Ohio St.3d at 439. Additionally, given that the Agreement involved sophisticated parties, and neither party contests the application of Utah law, there is no reason to believe that application of the choice-of-law provision in the Agreement would be improper.

For the remaining claims that do not stem from the Agreement but rather the allegedly improper sale of collateral, the parties agree that Ohio law should apply.

## Discussion

### 1. Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs claim that defendants violated the implied covenant of good faith and fair dealing by selling the Cedar Fair stock which they pledged as collateral for their loan.

An "implied covenant of good faith and fair dealing inheres in every contract." *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004). Utah courts have been careful to interpret the covenant not "to establish new, independent rights or duties not agreed upon by the parties." *Malibu Investment Co. v. Sparks*, 996 P.2d 1043, 1048 (Utah 2000) (internal quotation marks omitted). The

4

Agreement explicitly states that the determination of the Maintenance Requirement (a remedy-triggering event), and any subsequent sale of collateral, was in the sole discretion of defendants.

Utah courts have held that "[w]here the contract allows discretion but does not provide any express standard for exercising that discretion, the covenant imposes an objective standard of reasonableness." *Markham v. Bradley*, 173 P.3d 865, 872 (Utah Ct. App. 2007) (citing *Olympus Hills Shopping Center, Ltd. v. Smith's Food & Drug Centers, Inc.*, 889 P.2d 445 (Utah Ct. App.1994); *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 311 (Utah 1982)).

The documents presently before me contain no indication of that the parties adopted a "precise formula or test under which discretion [would] be exercised." *Id.*

Defendants argue that because plaintiffs agreed to put the maintenance requirement and any subsequent actions in defendants' sole discretion, they cannot now challenge their exercise of such discretion or that it be subject to external requirements. Their argument does not adequately respond to the Utah doctrine that, absent a "precise formula under which" they are to exercise their discretion, the implied covenant of good faith and fair dealing "imposes an objective standard of reasonableness."

"[W]hether there has been a breach of good faith and fair dealing is a factual issue, generally inappropriate for decision as a matter of law." *Oman v. Davis School Dist.*, 194 P.3d 956, 968 (Utah 2008) (internal quotation marks omitted). Plaintiffs have alleged sufficient facts to make out a plausible claim for the breach of the implied covenant of good faith and fair dealing.

## 2. Outrageous Conduct

Plaintiffs allege that defendants' actions constituted actionable outrageous conduct, causing plaintiffs "significant mental anguish and embarrassment."

5

To make out a claim for intentional infliction of emotional distress, plaintiffs "must allege facts sufficient to establish that: 1) the defendant intended to cause the plaintiff serious distress; 2) its conduct was extreme and outrageous; and 3) its action was a proximate cause of plaintiff's serious emotional distress." *Aker v. New York and Co., Inc.*, 364 F.Supp.2d 661, 667 (N.D. Ohio 2005). For conduct to be considered "extreme and outrageous", it must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Badri v. Huron Hosp.,* 691 F.Supp.2d 744, 771 (N.D. Ohio 2010) (quoting *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 375 (1983)).

Plaintiffs do not allege any course of conduct that rises to this level. Although plaintiffs argue that the sale of their pledged collateral was unauthorized and unjustified, they do not contend that there are no circumstances under which the sale would have been allowed. Defendants' contentions regarding this claim are well taken, and this claim must be dismissed.

### 3. Conversion

Plaintiffs allege in their complaint that the sale of their Cedar Fair stock constituted an unlawful conversion by defendants, as they did not have the authority to make the sale.

To make out a claim for conversion under Ohio law, plaintiffs "must establish three elements: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *City of Findlay v. Hotels.Com, L.P.*, 441 F.Supp.2d 855, 865 (N.D. Ohio 2006) (internal quotation marks omitted). When the party charged with conversion lawfully holds the property, the party claiming conversion must have unsuccessfully demanded that the holder return it. *Id.*

6

Plaintiffs do not claim that Merrill Lynch unlawfully held the Cedar Fair stock – in fact, they acknowledge that they submitted the stock to Merrill Lynch's control as collateral for their loan. Plaintiffs also do not allege that they made a demand for the return of their stock. Indeed, plaintiffs had no basis for such demand: until they had paid off the loan the collateral remained rightfully in defendants' hands.

Plaintiffs fail to allege facts necessary to assert a claim of conversion, and the claim must be dismissed.

### 4. Estoppel

Plaintiffs allege that defendants made assurances that their Cedar Fair stock would not be sold if they timely paid off the loan, and plaintiffs relied on these assurances to their detriment.

To state a claim for promissory estoppel under Ohio law, a plaintiff must plead: 1) a clear and unambiguous promise; 2) reliance by the party to whom the promise was made; 3) reasonable and foreseeable reliance; and 4) injury resulting from the reliance. *Patrick v. Painesville Commercial Properties Inc.*, 123 Ohio App.3d 575, 583 (1997).

Plaintiffs' claim relies on the alleged "assurances" made by Merrill Lynch that their Cedar Fair stock would not be sold. Plaintiffs state that "they were told by the defendants that they were taking all the right actions to prevent the sale of their collateral." [Doc. 36 at ¶ 2]. This does not constitute a "clear and unambiguous promise" not to sell the pledged collateral. Plaintiffs fail to make out a the necessary elements for a claim of promissory estoppel, and the claim must be dismissed.

### 5. Unjust Enrichment

Plaintiffs claim that the allegedly wrongful sale of the Cedar Fair stock unjustly enriched the defendants.

To state a claim for unjust enrichment under Ohio law, plaintiffs must allege: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (Ohio 1984) (internal quotation marks omitted).

Plaintiffs specify no facts to substantiate their claim of unjust enrichment beyond a conclusory statement that defendants made the sale "at a great corporate profit for themselves." [Doc. 36 at ¶ 41]. This fails to meet the pleading standards as it does not elevate the claim beyond mere speculation.

In any event, the complaint itself acknowledges that the defendants applied the proceeds against the outstanding balance on the loan. This hardly constitutes a "plausible" claim of unjust enrichment.

Plaintiffs have not made out a claim for unjust enrichment, and the claim should be dismissed.

### 6. Fraud

Plaintiffs assert two general frauds: first, defendants' concealment of their precarious financial condition and second, defendants' affirmative representation that the company functioned ethically.

Under Ohio law, to make out a claim for fraud, plaintiffs must allege

> (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its

8

    falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance.

*Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 501 (Ohio 2010).

### A. Concealment of Defendants' Financial Condition

A duty to disclose material facts arises when there is a fiduciary relationship between two parties. *In re National Century Financial Enterprises, Inc., Inv. Litigation*, 604 F.Supp.2d 1128, 1150 (S.D. Ohio 2009) (quoting *State v. Warner*, 55 Ohio St.3d 31, 54 (Ohio 1990)). Ohio courts have held that "the relationship of debtor and creditor, without more, is not a fiduciary relationship." *Blon v. Bank One, Akron, N.A.*, 35 Ohio St.3d 98, 101 (Ohio 1988).

Ohio statutory law establishes the same principle: "Unless otherwise expressly agreed in writing, the relationship between a bank and its obligor, with respect to any extension of credit, is that of a creditor and debtor, and creates no fiduciary or other relationship between the parties." O.R.C. § 1109.15.

Plaintiffs have failed to allege any facts which would demonstrate that defendants had a duty to disclose their general financial condition to plaintiff, and therefore fail to make out a claim for fraud on the basis of concealment of material facts.

### B. Affirmative Misrepresentations of Defendants' Ethics

A plaintiff must plead fraud with particularity. Fed. R. Civ. P. 9(b). At a minimum, this requires a plaintiff to "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks

and citations omitted)); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988) (finding fraud count sufficient under Rule 9(b)).

Plaintiffs fail to meet the burden of particularity. They rely on various publications and statements from Merrill Lynch, but do not specify how these statements were directed at them, who made these statements particularly, or how the misrepresentations played a role in their decision to take out a loan from Merrill Lynch. Perhaps most importantly, plaintiffs fail to allege fraudulent intent on the part of any specific defendant.

Plaintiffs' claim for fraudulent concealment of material facts must be dismissed.

## Conclusion

For the foregoing reasons it is therefore,

ORDERED THAT:

1. Defendants' motion to dismiss count one of plaintiffs' complaint be, and the same hereby is, denied.

2. Defendants' motion to dismiss all other counts in plaintiffs' complaint be, and the same hereby is, granted.

3. A scheduling conference is set for November 21, 2011 at 10:30 a.m. Out of town counsel may participate by phone.

So ordered.

s/James G. Carr
James G. Carr
Sr. United States District Judge