UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Richard L. Kinzel, et al.,                                    Case No.  3:10-cv-02169

                Plaintiffs

     v.                                                            MEMORANDUM OPINION
                                                                AND ORDER

Bank of America, et al.,

                Defendants


### INTRODUCTION AND BACKGROUND

This matter is before me on the motion of Defendants Merrill Lynch Bank U.S.A., et al., for partial judgment on the pleadings pursuant to Fed. R. Civ. Pro. 12(c).  (Doc. No. 58).  Plaintiffs Richard L. Kinzel, individually and as trustee of the Richard L. Kinzel Revocable Trust, and Judith A. Kinzel, individually and as trustee of the Judith A. Kinzel Revocable Trust filed a brief in opposition.  (Doc. No. 71).  Defendants filed a brief in reply.  (Doc. No. 85).  Plaintiffs then filed a sur-reply brief.  (Doc. No. 89).

Also before me are two motions filed by Plaintiffs.  The first is for reconsideration of the dismissal of their conversion claim as well as several other claims.  (Doc. No. 71).  Defendants filed a brief in opposition.  (Doc. No. 84).  Plaintiffs filed a brief in reply.  (Doc. No. 91).

The second is for leave to file a third amended complaint.  (Doc. No. 79).  Defendants filed a brief in opposition.  (Doc. No. 83).  Plaintiffs have filed a brief in reply.  (Doc. No. 90).  For the reasons stated below, all three motions are denied.

On April 15, 2008, Plaintiffs entered into a Loan Management Account Agreement (the "LMA") with Merrill Lynch. (Doc. No. 1-1). Plaintiffs filed suit on September 27, 2010, alleging "Merrill Lynch wrongfully sold their pledged collateral in breach of [the LMA]." (Doc. No. 48 at 1). Defendants moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. Pro. 12(b)(6). (Doc. No. 41). Senior District Court Judge James G. Carr granted Defendants' motion as to five of the Plaintiffs' six claims, but ruled Plaintiffs could proceed with their claim for breach of the covenant of good faith and fair dealing, implied by law into the LMA. (Doc. No. 48).

On June 15, 2012, Defendants filed a motion for partial judgment on the pleadings. (Doc. No. 58). Defendants assert Richard and Judith Kinzel are not parties to the LMA in their individual capacities and so they do not have standing to bring a claim for breach of the implied covenant of good faith and fair dealing. (Doc. No. 58 at 1-2). On August 15, 2012, Plaintiffs filed a brief in response which also included a request for reconsideration of Judge Carr's dismissal of Plaintiffs' previously alleged claim for conversion and a motion for leave to file a third amended complaint. (Doc. No. 71). Judge Carr instructed Plaintiffs to file their motions for reconsideration and for leave to amend separately. (Doc. No. 76). On September 11, 2012, I was assigned this case after Judge Carr recused himself. (*See* Doc. No. 78).

## MOTION FOR RECONSIDERATION

Plaintiffs request that I "reconsider the dismissal of [their] conversion claim . . ." pursuant to Fed. R. Civ. Pro. 54(b). (Doc. No. 91 at 1, 3). Rule 54(b) provides that any order or decision, other than a "final judgment" entered as described in the text of the Rule, "that adjudicates fewer than all the claims . . . of fewer than all the parties does not end the action as to any of the claims or parties . . . may be revisited at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. Pro. 54(b). "The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Reich v. Hall*

2

*Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998) (*citing Petition of U.S. Steel Corp.*, 479 F.2d 489 (6th Cir. 1973), *cert. denied, Fuhrman v. U.S. Steel Corp.*, 414 U.S. 859 (1973)).

In ruling on Defendants' motion to dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6), Judge Carr concluded Plaintiffs failed to allege facts sufficient to assert a claim for conversion and therefore dismissed that claim. (Doc. No. 48 at 6-7). Plaintiffs now "request that this Court reform its decision to allow a claim for conversion." (Doc. No. 71 at 32). Plaintiffs claim Judge Carr's "ruling was a manifest violation of current law." (Doc. No. 90 at 8). Plaintiffs assert that the deposition testimony of three Merrill Lynch employees[1] establishes that Plaintiffs' conversion claim was wrongfully dismissed, and that Judge Carr misapplied the holding of *City of Findlay v. Hotels.com, L.P.*, 441 F. Supp.2d 855 (N.D. Ohio 2006). (Doc. No. 91 at 1-2). In response, Defendants argue I should deny Plaintiffs' motion for reconsideration because (1) the motion was not timely filed; (2) the motion does not establish a clear error of law, newly discovered evidence, an intervening change in law, or the presence of a manifest injustice; and (3) Plaintiffs' conversion claim fails as a matter of law. (Doc. No. 84).

As an initial matter, Plaintiffs have offered arguments in support of a conversion claim on multiple occasions since Judge Carr dismissed that count of the Second Amended Complaint. (*See* Doc. No. 71 at 39-41, Doc. No. 80 at 31-32, Doc. No. 90 at 8, and Doc. No. 91). Despite this, Plaintiffs provide only two citations to the deposition transcripts; in those citations, Plaintiffs claim, the deponents admit (1) no one notified Plaintiffs the loan balance under the LMA would be accelerated and (2) Defendants never gave Plaintiffs a notice of exclusive control. (Doc. No. 91 at 6). Neither of these citations provides any new evidence in support of Plaintiffs' claim, as Plaintiffs pointed to allegations to this effect in their brief in opposition to Defendants' motion to dismiss the Second Amended Complaint. (*See* Doc. No. 42 at 11 ("plaintiffs have alleged that they did not receive any prior notice of sale, including a Notice of Exclusive Control.")).

---

[1] Heidi Harms, Jonathan Sargent, and Douglas Rosen. (Doc. No. 91 at 1, 4).

3

Distilled to its elements, Plaintiffs' conversion claim is no different than a breach of contract claim. Plaintiffs assert Defendants "sold [P]laintiffs' property without any demand for repayment of the loan balance prior to the sale **in violation of the LMA**." (Doc. No. 91 at 6 (emphasis added)); *see also*, (id. at 7 ("[t]he failure to make a demand for repayment, **as required by the LMA**[,] combined with the Kinzels' repeated instructions² not to sell their Cedar Fair units, sets forth a conversion claim under Ohio law.") (emphasis added); Doc. No. 71 at 34 (Plaintiffs should be permitted to proceed with conversion claim because Merrill Lynch "ignored its contractual obligation . . . .")). Under Ohio law, this means Plaintiffs may not proceed with a claim for conversion.³ *See Schwartz v. Bank One*, 619 N.E.2d 10, 13 (Ohio Ct. App. 1992) ("Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." (*citing Ketcham v. Miller*, 136 N.E. 145, 146 (Ohio 1922))); *Salvation Army v. Blue Cross and Blue Shield*, 636 N.E.2d 399, 403 (Ohio Ct. App. 1993) ("It is not a tort to breach a contract, no matter how willful or malicious the breach.").

Plaintiffs present no new evidence and fail to identify an intervening change of controlling law or a need to correct a clear error or prevent manifest injustice. Plaintiffs also fail to identify a basis for their conversion claim independent of the LMA. Therefore, Plaintiffs' motion for reconsideration is denied.

## MOTION TO AMEND THE PLEADINGS

---

² Plaintiffs provide only conclusory allegations that they told Defendants not to sell their stock in Cedar Fair. Plaintiffs fail to identify a single piece of evidence in support of this contention. Importantly, Plaintiffs concede that this stock was held in an account identified as collateral for repayment of the LMA loan. (Doc. No. 80 at 31). Even assuming Plaintiffs' alleged prohibition on the sale of the stock is enforceable, the propriety of Defendants' sale of that stock is a matter of contract interpretation, not tort law.

³ Plaintiffs' claim that Judge Carr misapplied *City of Findlay* is inapposite. Judge Carr cited *City of Findlay* merely to note the elements necessary to state a cause of action for conversion under Ohio law. The relationship between the parties in that case was not governed by a contract and so the holding of *City of Findlay* is not pertinent to Plaintiffs' conversion claim in this case.

4

Plaintiffs request leave to file a third amended complaint. (Doc. No. 79). Plaintiffs' proposed third amended complaint would state causes of action for breach of contract, breach of the duty of good faith and fair dealing, negligence, conversion, and breach of fiduciary duty. (Doc. No. 80). Defendants argue Plaintiffs' motion for leave to amend should be denied as futile because "Plaintiffs' newly proposed claims . . . fail as a matter of law . . . ." (Doc. No. 83 at 11). I agree the proposed amendments would not survive a motion to dismiss pursuant to Rule 12(b)(6) and therefore Plaintiffs' motion for leave to amend is denied.

Rule 15 provides a party may amend its pleadings once as a matter of course within 21 days of serving it or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. Pro. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

Under Rule 16(b), a district court must issue a scheduling order limiting, *inter alia*, the time to amend the pleadings. Fed. R. Civ. Pro. 16(b)(3). The scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. Pro. 16(b)(4). In determining whether good cause exists to modify a scheduling order, a court should consider "the diligence of the party seeking the extension" and "whether the opposing party will suffer prejudice by virtue of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (*citing Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625

(6th Cir. 2002)).  When a scheduling order deadline has passed, "a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."  *Leary*, 349 F.3d at 909.

Judge Carr previously entered an order instructing Plaintiffs to submit their proposed amended complaint by September 14, 2012.  (Doc. No. 76).  Judge Carr did not issue a written analysis of the Rule 16(b)(4) good cause requirement, but I will proceed on the assumption that the August 29, 2012 order was based upon his conclusion that requirement had been met.

First, Plaintiffs argue they should be permitted to proceed with a claim for breach of the LMA through (1) a third amended complaint or (2) reconsideration of Judge Carr's earlier conclusion "that the defendants complied with the wording of the contract."  (Doc. No. 90 at 5, Doc. No. 71 at 29).  To the extent the breach of contract allegations in the proposed third amended complaint differ from any contained in the second amended complaint, Plaintiffs fail to produce a claim that could survive a motion to dismiss.  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 807 (6th Cir. 2005) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.").  Plaintiffs claim Defendants breached the LMA "in the manner and method in which they handled the collateral."  (Doc. No. 90 at 5).  This is no different from Plaintiffs' claim for breach of the implied duty of good faith and fair dealing – a claim on which I already noted Plaintiffs may proceed.

To the extent Plaintiffs challenge Judge Carr's conclusion that they failed to state a claim for breach of the LMA, they offer nothing more than their competing interpretation of the LMA. Plaintiffs fail to produce any new evidence to support a claim that Defendants breached the LMA, or to identify a change in controlling law or a need to correct a clear error or prevent manifest injustice.  *See Reich*, 990 F. Supp.2d at 965.

Second, Plaintiffs restate their claim for breach of the implied covenant of good faith and fair dealing.  Judge Carr ruled "Plaintiffs have alleged sufficient facts to make out a plausible claim

6

for the breach of the implied covenant of good faith and fair dealing." (Doc. No. 48 at 5). Accordingly, Plaintiffs may proceed on that claim despite my denial of their motion for leave to amend.

Third, Plaintiffs seek to pursue a claim for negligence. (Doc. No. 71 at 34-35; *see also* Doc. No. 90 at 7 ("The plaintiffs' proposed complaint alleges that the defendants had a duty to preserve the collateral and to make certain that it was sold in a [commercially reasonable] manner.")). Plaintiffs' purported negligence claim suffers from two fatal defects:

(1) Any duty Defendants bore with respect to Plaintiffs arose out of the LMA, and Plaintiffs fail to identify an independent basis to support a tort claim. *See Schwartz*, 619 N.E.2d at 13 ("Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract.").

(2) Plaintiffs already stated a claim for breach of the implied duty of good faith and fair dealing. Any duty Defendants had to dispose of the collateral in a commercially reasonable manner is governed by that claim. (*See* Doc. No. 48 at 5).

Fourth, Plaintiffs seek to restate a claim for conversion. As I noted with respect to Plaintiffs' motion for reconsideration, they fail to identify any independent basis for this tort claim and it may not go forward.

Fifth, Plaintiffs seek to assert a claim for breach of fiduciary duty. (Doc. No. 80 at 32). Once again, Plaintiffs' claim must fail. Judge Carr previously ruled there is no fiduciary relationship between the parties. (Doc. No. 48 at 9). Plaintiffs point to no new evidence to support their claim; nor do they identify a change in controlling law or a clear error.

Plaintiffs point to *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442 (6th Cir. 2012) in arguing their more than 20 year banking relationship with Merrill Lynch created a fiduciary relationship. (Doc. No. 90 at 6). In *Lee*, employees of a mortgage broker named Stonefire worked as intermediaries between the plaintiffs and Countrywide. The Sixth Circuit noted that under Ohio

7

law, the mortgage broker acted as the plaintiffs' fiduciary. *Lee*, 692 F.3d at 447. The court concluded the plaintiffs had "presented a question of fact as to whether Countrywide knew that Stonefire was violating its fiduciary duties . . . ." *Id.* The court, however, explicitly stated it would "not impose a fiduciary duty on Countrywide." *Id.* at 450. Rather, the Sixth Circuit referred to the relationship between Countrywide and the plaintiffs as a borrower-lender relationship. *Id.* at 444. The relationship between Plaintiffs and Merrill Lynch is no different. *Lee* does not indicate a change in the law which would create a fiduciary relationship between the parties.

Even if Defendants provided "advice . . . in a congenial atmosphere and in a sincere effort to help [Plaintiffs] prosper, nevertheless, the advice was given by an institutional lender in a commercial context in which the parties dealt at arm['s] length, each protecting his own interest." *Umbaugh Pole Bldg. Co., Inc. v. Scott*, 390 N.E.2d 320, 323 (Ohio 1979). Plaintiffs have, and had, a formal relationship with Defendants and their predecessors, which is based on "financial matters." (Doc. No. 80 at 32). Defendants' duties to Plaintiffs arise out of the documents and statutes governing that relationship. Plaintiffs fail to state a claim which could survive a motion to dismiss and fail to identify a basis for amending Judge Carr's earlier ruling.

In sum, Plaintiffs' motion for leave to amend is denied because amendment would be futile and it would cause substantial prejudice to Defendants to require them to defend against these meritless claims. Plaintiffs may proceed on the remaining claim for breach of the implied duty of good faith and fair dealing.

### MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendants have filed a motion for partial judgment on the pleadings pursuant to Rule 12(c). (Doc. No. 58). Defendants assert the claims of Richard and Judith Kinzel in their individual capacities should be dismissed "because they lack standing to pursue the sole remaining claim for breach of an implied covenant of good faith and fair dealing because they are not parties to the contract at issue." (Doc. No. 58-1 at 1).

Under Rule 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). "A motion brought pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Coyer v. HSBC Mortg. Servcs., Inc.*, 701 F.3d 1104, 1107 (6th Cir. 2012) (*quoting Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)).

Plaintiffs' first argument in opposition is "[t]he trustee signatures on the contract were provided for a void trust. . . . Consequently, the LMA is void as it applies to the trustees." (Doc. No. 71 at 8-9). Plaintiffs support this argument by stating (1) the LMA lists the Kinzels as trustees of trusts created in 1989; (2) those trusts were amended several times between 1989 and 2008, when the LMA was signed; and (3) the only valid trusts were those amended and executed in 2006, as the 2006 amendments voided all other trusts. (Id.). Plaintiffs also claim they "never noticed the date of the trust above their signatures when they signed the LMA." (Doc. No. 71 at 9).

I find this argument and the attendant reasoning mystifying. First, Plaintiffs' conduct throughout this litigation evidences a belief that the Kinzels as trustees have a claim for relief against Defendants; the original, first amended, second amended, and proposed third amended complaints, as well as the answer to Defendants' counterclaim, all list Richard and Judith Kinzel as plaintiffs or counterclaim defendants in their capacities as trustees of their respective trusts. (*See* Doc. No. 1, 21, 36, 51, 80). Particularly damning is the proposed third amended complaint, in which Plaintiffs do not terminate the participation in this litigation of the Kinzels as trustees. This continued participation comes despite the fact their argument leads to the logical – and consequential – conclusion that the Kinzels as trustees of a void trust would not have standing to bring suit for violation of the LMA. Further, Plaintiffs' purported inattentiveness to the documents they executed provides them no relief. *See McAdams v. McAdams*, 88 N.E. 542, 544 (Ohio 1909) ("A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different

9

from what he intended, when he could have known the truth by merely looking when he signed."); *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 579 (Ohio 1998) (affirming "[t]he legal and common-sensical axiom that one must read what one signs . . . .").

Second, this line of Plaintiffs' argument is flatly refuted by the text of the trust agreements as well as Ohio law. Plaintiffs filed documents which purport to be the Amended and Restated Declaration of Trust for Richard L. Kinzel and the Amended and Restated Declaration of Trust for Judith A. Kinzel. (Doc. No. 71-2 at 1, 29). These documents indicate the Kinzels created revocable trust agreements on or about August 13, 1989, and that those trust agreements were amended on or about June 25, 1997, January 5, 1999, May 2006, and September 1, 2006.[4] (Id.). These documents also designated the agreements as the "Richard L. Kinzel Trust Agreement (Dated August 13, 1989, and as amended and restated on May __, 2006)" and the "Judith A. Kinzel Trust Agreement (Dated August 13, 1989, and as amended and restated on September 1, 2006)." (Id.). Further, the trust agreements designate Ohio law as the governing law. (Id. at 24, 50).

Under Ohio law, "[a] court's primary purpose when construing will or trust provisions is to give effect to the intent of the testator or grantor when legally possible. . . . When the content of the document is unambiguous, the intent of the grantor is to be derived from the plain language used." *Lourdes College of Sylvania, Ohio v. Bishop*, 703 N.E.2d 362, 366 (Ohio Ct. Com. Pl. 1997) (*citing Domo v. McCarthy*, 612 N.E.2d 706, 708 (Ohio 1993)). Further, "[t]he settlor may revoke or amend a revocable trust by substantial compliance with a method provided in the terms of the trust or, if the terms of the trust do not provide a method, by any method manifesting clear and convincing evidence of the settlor's intent . . . ." O.R.C. 5806.02(C). The language of the trust agreements is clear – those agreements were created on or about August 13, 1989, and were amended on three

---

[4] Plaintiffs filed an unexecuted copy of Richard Kinzel's trust agreement which indicates it was to be amended "on May ___, 2006." (Doc. No. 71-2 at 1). I conclude none of the amendments to the trust agreement voided or revoked the original agreement and therefore it is immaterial whether or not Mr. Kinzel actually executed the 2006 amendment documents, as the 1989 agreement is valid.

subsequent occasions. The documents contain no language that could provide even colorable support to a claim that the original trusts had been terminated.

Plaintiffs' second argument in opposition to Defendants' motion for partial judgment on the pleadings posits that the Kinzels individually are parties to the LMA under the Other Parties clause. (Doc. No. 71 at 3). The Other Parties clause states "[o]ther parties [to the LMA] include any person who is providing a lien and security interest in the Securities Account . . . and other collateral described below . . . ." (Doc. No. 1-1 at 1). Plaintiffs contend this clause "makes the Kinzels a party to the contract because they provided all the funds and additional security to satisfy the contract." (Doc. No. 89 at 6). Defendants claim the LMA identifies "three accounts which provide a first priority lien and security interest" under the LMA, and that these accounts "belong solely to one of the Kinzel Trusts . . . ." (Doc. No. 85 at 6-7). Additionally, Defendants assert "per the express terms of the LMA, the Kinzels did not individually provide any lien or security interest, and therefore are not '[o]ther parties' to the LMA." (Id. at 7).

If this were the extent of the argument, Defendants very well may have prevailed on their motion. Defendants, however, go on to state "over the life of the LMA, any and all monies used to paydown or payoff the outstanding loan balance were deposited into one of these three accounts, and all loan payments were made out of one of these accounts." (Doc. No. 85 at 7). As Plaintiffs point out, "this is a statement without support." (Doc. No. 89 at 6). It also is a statement that raises a number of questions about what exactly the three account numbers included in the LMA actually represent. Plaintiffs provide, under seal, copies of documents they maintain are emails sent by Merrill Lynch employees in the days immediately following execution of the LMA. (Doc. No. 72-5 and 72-6). These emails indicate a substantial number of shares of stock were transferred from an account held by Richard Kinzel, individually, into an account identified in the LMA and held by the Richard L. Kinzel Trust.

At the very least, these documents take Defendants' motion outside the realm of Rule 12(c). *See* Fed. R. Civ. Pro. 12(d) ("If, on a motion under . . . Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  I conclude the question of whether the Kinzels individually have standing to bring suit for breach of the implied duty of good faith and fair dealing is not one that fairly can be decided solely on the pleadings.  Therefore, Defendants' motion for partial judgment on the pleadings is denied.  The parties may revisit this issue in their summary judgment briefing, if appropriate.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for reconsideration, (Doc. No. 71), as well as their motion for leave to file a third amended complaint, (Doc. No. 79), and Defendants' motion for partial judgment on the pleadings, (Doc. No. 58), are denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge