UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard L. Kinzel, et al.,            Case No. 3:10-cv-02169

        Plaintiffs

   v.                                            MEMORANDUM OPINION
                                                          AND ORDER

Bank of America, et al.,

        Defendants

### INTRODUCTION

Before me is the motion of Defendants Merrill Lynch Bank U.S.A., et al., to strike the jury demand made by Plaintiffs Richard L. Kinzel, individually and as trustee of the Richard L. Kinzel Revocable Trust, and Judith A. Kinzel, individually and as trustee of the Judith A. Kinzel Revocable Trust. (Doc. No. 104). Plaintiffs have filed a brief in opposition. (Doc. No. 106). Defendants filed a brief in reply. (Doc. No. 119). For the reasons stated below, Defendants' motion is granted.

### BACKGROUND

On April 15, 2008, Plaintiffs entered into a Loan Management Account Agreement (the "LMA Agreement") with Merrill Lynch. (Doc. No. 1-1). Plaintiffs filed suit on September 27, 2010, alleging, *inter alia*, Defendants "failed to exercise good faith and fair dealing" with respect to their duties and obligations under the LMA Agreement. (Doc. No. 36 at 19). In their complaint, Plaintiffs demanded a jury. (Id. at 24).

The LMA Agreement contains the following provision: "[t]o the extent allowed by law, each Loan Party waives all right to a jury trial with respect to any action or dispute relating to the LMA or this Agreement." (Doc. No. 1-1 at 9). Defendants argue "Plaintiffs knowingly and voluntarily agreed to waive their right to a jury trial [and] . . . [t]herefore Plaintiffs' demand for a jury trial should be stricken." (Doc. No. 104 at 4). Plaintiffs contend (1) Defendants' motion to strike should be denied because it is untimely; (2) the Kinzels as individuals did not sign the LMA Agreement and never waived their right to a jury trial; (3) the Kinzels as trustees did not have the authority to waive a jury trial on behalf of the beneficiaries of the trusts; and (4) they did not knowingly and voluntarily waive their right to a jury trial. (Doc. No. 106).

## STANDARD

In part, the Seventh Amendment guarantees the right to a jury trial in civil cases where a plaintiff seeks a remedy for a legal injury. The right to a jury trial may be waived. *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 548 (6th Cir. 1995). The categories of enforceable waivers include those made "by prior written agreement" by "the parties to a contract." *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985). "[I]n the context of an express contractual waiver the objecting party [has] the burden of demonstrating that its consent to the provisions was not knowing and voluntary." *Id.* at 758. The Sixth Circuit has identified the following factors for use in determining whether a waiver of the right to a jury trial has been knowing and voluntary:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

*Hergenreder v. Bickford Senior Living Group, LLC,* 656 F.3d 411, 420-21 (6th Cir. 2011) (*citing Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 669 (6th Cir. 2003) (en banc)).

ANALYSIS

**TIMELINESS**

Defendants moved to strike Plaintiffs' jury demand pursuant to Rule 39, which provides "trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). Plaintiffs argue Defendants' motion is untimely under Rule 12(f). This Rule states a court, on its own or by motion, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion filed under this Rule must be made "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Plaintiffs do not identify what exactly it is about their jury demand that might be considered redundant, immaterial, impertinent, or scandalous, or how the jury demand might be construed as an insufficient defense.

Though this issue rarely arises, other federal courts consistently "have cited and applied [Rule 39(a)] in decisions striking a jury demand because the right to a jury trial, having been contractually waived, no longer existed." *Mowbray v. Zumot*, 536 F. Supp. 2d 617, 621 (D. Md. 2008); *see also Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 226-27 (3rd Cir. 2007) (motion to strike jury demand was permissible under Rule 39(a) even though the motion was filed after the close of discovery, only six weeks before trial, eight months after motions for summary judgment were filed, and three years after the complaint). *Cf. Moore's Federal Practice*, § 39.13(2)(c) (3d ed. 2007) ("Parties have a great deal of latitude on the timing of motions to strike a jury demand. Because a court has the power to act sua sponte at any time . . . it follows that a court has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial."). In sum, Rule 39 applies, not Rule 12(f), and Defendants' motion is timely.

**JURY WAIVER BY THE INDIVIDUAL PLAINTIFFS**

Plaintiffs contend "Clause 2 [of the LMA Agreement] makes the Kinzels [as] individuals parties to the contract [because] they individually pledged securities or guarantees to support the contract." (Doc. No. 106 at 2). Plaintiffs further contend this is "importan[t]" because the Kinzels as individuals "never signed the LMA [Agreement] and never waived their constitution[al] right to a jury trial." (Id.). Defendants assert that, even if the Kinzels as individuals are "Other Parties" to the contract, they remain bound by the terms and conditions of the contract. (Doc. No. 119 at 3). Whether as a contractually-created party or a third-party beneficiary, it is Defendants' position that "[a] non-signatory party to a contract that claims a right of enforcement in the contract is subject to the same terms and conditions as the parties that signed the contract." (Id. at 4).

"It goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Plaintiffs, however, contend that as individuals, the contract makes them "Other Parties." The clause that allegedly creates this result falls within numbered paragraph 2, titled "The Parties." (Doc. No. 1-1 at 1). Subsequently, the contract contains a clause that provides "each Loan Party waives all right to a jury trial with respect to any action or dispute relating to the LMA or this Agreement." (Id. at 9).

While it is true the Kinzels did not sign the LMA Agreement in their individual capacities, they also were not strangers to the Agreement. They allege they pledged collateral as security pursuant to the terms of the Agreement, but claim they cannot be held to the jury waiver provision because they did not sign the Agreement as individuals. This is not persuasive. If the Kinzels as individuals are parties to the contract,[1] they are bound by the terms of the contract from which their claims arise. The law requires that the party who objects to an express contractual jury waiver carry

---

[1] Defendants assert, as they have numerous times before in other motions and briefs, that the Kinzels as individuals are not parties to the contract and therefore do not have standing to sue. (Doc. No. 119 at 3). Defendants also have filed a motion seeking summary judgment; a part of this motion deals with the standing contention. (Doc. No. 113). The effectiveness of the contractual jury waiver does not turn on the standing of the Kinzels as individuals to sue on the contract, and so I do not need to resolve that issue here.

4

the burden of proving the waiver was not "done knowingly, voluntarily and intentionally . . . ." *K.M.C. Co., Inc.*, 757 F.2d at 755.

It is not clear how the Kinzels as individuals might qualify as third-party beneficiaries, as they claim they provided something of value to the signatories of the contract and do not assert the LMA Agreement was entered into directly and primarily for their benefit.  Additionally, I note Plaintiffs have never advanced this theory.  As Defendants noted, however, it is a generally-accepted principle of contract law that a third-party beneficiary is bound by all of the terms of a contract. (Doc. No. 119 at 4) (*citing* 13 Williston on Contracts § 37.25 (4th ed. 2013)).  To avoid the contractual waiver, Plaintiffs must prove it was not knowing, voluntary, and intentional.

**TRUSTEES NOT PERMITTED TO WAIVE RIGHT TO JURY**

Plaintiffs assert "[t]he trust documents gave the plaintiffs no authority to waive constitutional rights which protected the trust" and therefore, they imply, the trustees' assent to the jury waiver provision is invalid.  (Doc. No. 106 at 9).  As Defendants point out, however, the trust documents authorize the trustees "to exercise all powers in the management of the Trust Estate which any individual could exercise in his or her own right, upon such terms and conditions as [the trustee] may reasonably deem best . . . ."  (Doc. No. 71-2 at 16).  As the ability of an individual to waive his constitutional right to a jury trial in a civil case is beyond question, the remaining question – whether the trustees breached their fiduciary duties in waiving a jury trial – is outside the scope of this litigation and would be more appropriately resolved in a lawsuit by the beneficiaries of the Trusts against the trustees.

**THE JURY WAIVER**

The Sixth Circuit instructs lower courts to utilize the following factors in determining whether a waiver of the right to a jury trial has been knowing and voluntary:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

5

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (*quoting Adams v. Philip Morris, Inc.* 67 F.3d 580, 583 (6th Cir. 1995)). Plaintiffs have the burden of proving their consent to the jury waiver provision "was not knowing and voluntary." *K.M.C. Co., Inc.*, 757 F.2d at 758.

Plaintiffs focus their argument on this issue almost exclusively on Richard Kinzel. They argue (1) Mr. Kinzel "had very little exposure to law or the ramifications of the [C]onstitution [and] . . . knew no more, or less, about the Constitution than the average high school graduate"; (2) he believed "all disputes would be handled by an arbitration panel [and] . . . that the arbitration clause negated the jury clause because arbitration panels have no juries"; (3) "[n]o employee at [Merrill Lynch] ever pointed out to Richard Kinzel that he was waiving his right to a jury trial and it was never negotiated as part of the contract"; (4) "the plaintiffs were dealing with a contract of adhesion involving two . . . parties of unequal bargaining power"; and (5) the arbitration and jury waiver provisions, when read in concert, "created an ambiguity in the contract." (Doc. No. 106 at 6-8).

Plaintiffs' arguments are not persuasive, and fall far short of carrying their burden of proof. While Plaintiffs highlight the fact that Richard Kinzel's formal education ended with a high school diploma, this does not negate the fact that he is a highly successful individual who became the C.E.O. of a publicly traded corporation, Cedar Fair. *Cf. Moore v. Ferrellgas, Inc.*, 533 F.Supp.2d 740, 749-50 (W.D. Mich. 2008) (concluding plaintiff "knowingly and voluntarily waived his right to a judicial forum" where plaintiff had "a high school education" and held various management positions with the defendant employer). Moreover, Richard Kinzel's career and earnings helped provide Plaintiffs with the financial wherewithal to enter into an agreement that permitted them to borrow up to eight million dollars. (See Doc. No. 1-1 at 10).

Plaintiffs do not assert they were pressured into signing the LMA Agreement without being given time to review it, or that they did not have the opportunity to consult with a lawyer. Rather, they appear to contend that if they had consulted with a lawyer, they would have been told any disputes arising under the contract would have been submitted to arbitration. (Doc. No. 106 at 6-7).

6

Whether or not this is true, I fail to see its relevance. As Plaintiffs make clear, Mr. Kinzel knew "arbitration panels have no juries." (Id.). Plaintiffs had time to read the contract as well as the opportunity to consult with an attorney if they wished to do so. (See Doc. No. 110 at 29 (affirming he did not think it was necessary to consult a lawyer before signing the LMA Agreement, but could have done so if he chose)).

Further, Plaintiffs misrepresent Mr. Kinzel's deposition testimony. He did not say "he believed that the arbitration clause negated the jury clause because arbitration panels have no juries." (Id.). Instead, he testified he understood he was waiving the right to a jury trial – while he "would prefer a jury trial . . . the contract said that we would go to arbitration." (Doc. No. 110 at 56).

Additionally, the jury waiver provision was clear. It is printed in bold font and, by its express terms, informs the parties to the contract that they waive "all right to a jury trial with respect to any action or dispute relating to the LMA or this Agreement." (Doc. No. 1-1 at 9). Contrary to Plaintiffs' protestations, the jury waiver provision and the arbitration provisions do not create an ambiguity, as they do not in any way give rise to two or more reasonable but differing contractual interpretations. The arbitration clause covers disputes concerning securities accounts held with Merrill Lynch, Pierce, Fenner & Smith, Inc., and Merrill Lynch Bank & Trust Co., FSB; Plaintiffs admit they knew arbitration did not utilize juries. (Id. at 7; Doc. No. 106 at 6). There is nothing in either the jury waiver provision or the arbitration provision that contradicts the language of the other.

Further, the LMA Agreement is not a contract of adhesion. There was consideration given for Plaintiffs' jury waiver, as Merrill Lynch also waived its right to a jury trial. There was not a disparity of bargaining power. While Plaintiffs may have "relied exclusively on [Merrill Lynch] to advise them on all financial matters," they fail to identify any evidence in the record to support the implication they were unable to pursue or obtain a loan through alternate means. Rather, Mr. Kinzel's deposition testimony directly contradicts that implication. (See Doc. No. 110 at 31 (Mr.

7

Kinzel "probably could have [gone] somewhere else and obtained a loan . . . ."); id. at 31-32 (Mr. Kinzel affirmed he thought, "[g]iven [his] net worth and credit at the time . . . [he] would have been able to obtain a [similar] loan . . . from another financial institution")).

I conclude Plaintiffs have failed to carry their burden of proving they did not knowingly and voluntarily waive their constitutional right to a jury trial. Defendants' motion to strike Plaintiffs' jury demand is granted.

## CONCLUSION

For the reasons stated above, Defendants' motion is granted. Plaintiffs' jury demand is stricken and this case will be removed from the jury calendar.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge

8