UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard L. Kinzel, et al.,                    Case No. 3:10-cv-02169

           Plaintiffs

   v.                                      MEMORANDUM OPINION
                                                 AND ORDER

Bank of America, et al.,

           Defendants

### INTRODUCTION

Before me are the amended motion of Plaintiffs Richard and Judith Kinzel to Conform the Pleadings to the Evidence Pursuant to Civil Rule 15(a) and 15(b) and Rule 16(a) and (b), (Doc. No. 136), and the motion of Defendants Merrill Lynch Bank U.S.A., et al., to Strike Plaintiffs' Motion for Partial Summary Judgment, (Doc. No. 120). The parties completed briefing on Plaintiffs' initial motion to conform the pleadings, (Doc. No. 130), before Plaintiffs filed their amended motion; because the amended motion does not differ substantively from the initial motion, I considered Defendants' opposition and Plaintiffs' reply briefs as though those motions were filed in response to Plaintiffs' amended motion. Plaintiffs' initial motion to conform the pleadings is denied as moot. For the reasons stated below, (1) Plaintiffs' amended motion is granted in part and denied in part, and (2) Defendants' motion to strike is granted in part and denied in part.

**BACKGROUND**

On April 15, 2008, Plaintiffs entered into a Loan Management Account Agreement (the "LMA Agreement") with Merrill Lynch.  (Doc. No. 1-1).  Plaintiffs filed suit on September 27, 2010, alleging, *inter alia*, Defendants "failed to exercise good faith and fair dealing" with respect to their duties and obligations under the LMA Agreement.  (Doc. No. 36 at 19).  Defendants moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. Pro. 12(b)(6).  (Doc. No. 41).  Senior District Court Judge James G. Carr granted Defendants' motion as to five of the Plaintiffs' six claims, but ruled Plaintiffs could proceed with their claim for breach of the covenant of good faith and fair dealing, implied by law into the LMA Agreement.  (Doc. No. 48).

Subsequently, Defendants filed a motion for partial judgment on the pleadings, (Doc. No. 58), while Plaintiffs filed a motion for reconsideration, (Doc. No. 72), and a motion for leave to file a third amended complaint, (Doc. No. 79).  All three motions were denied.[1]  (Doc. No. 97).

On July 1, 2013, the parties filed cross motions for summary judgment.  (*See* Doc. No. 113 and Doc. No. 115).  Defendants moved to strike Plaintiffs' summary judgment motion as "wholly improper because it seeks summary judgment rulings on alleged breach of contract claims that have been previously dismissed from this lawsuit."  (Doc. No. 120 at 1).  Defendants assert Plaintiffs' motion is frivolous and request an order awarding attorney fees incurred in preparing and filing the motion to strike.  (Id. at 5).  Plaintiffs argue their summary judgment motion is not frivolous because there is some overlap between breach of contract claims and claims alleging breach of the duty of good faith, and further argue that the Civil Rules "clearly mandate that pleadings can and should be amended at [any time] . . . to conform with the evidence."  (Doc. No. 129 at 2) (emphasis removed).  Plaintiffs then filed their motion to "amend the pleadings to conform with the evidence solicited," and citing to their brief in opposition to Defendants' motion to strike as well as their motion and brief for partial summary judgment.  (Doc. No. 130).

---

[1]  I was assigned to this case after Judge Carr recused himself.  (*See* Doc. No. 78).

2

## DISCUSSION

Plaintiffs seek summary judgment on the following ten issues:

I. Richard and Judith Kinzel, as trustees and individuals, fully complied with all of the terms of the [LMA] Agreement contract . . . . There is no evidence that they, in any way, breached the said contract.

II. Richard and Judith Kinzel, individually, are parties to the contract by virtue of Clause 2[,] referred to as the "other person clause[.]"

III. [Merrill Lynch] selected the numbered security accounts which would be used to support the LMA loan. It selected . . . 540,000[ ] units of Cedar Fair [stock] even though it knew it was a thinly traded security and had limitations as to how quickly it could be sold.

IV. The sale of . . . 167,900[ ] units of Cedar Fair [stock] took place without giving the Kinzels' any notice. The sale was contrary to the specific order of the Kinzels.

V. The Bank sold the [Cedar Fair] units without ever providing [the Kinzels] with a notice of exclusive control of the units in the account as required by Clause 6 of the LMA [Agreement]. This act violated the Kinzels' right under the contract to control all transactions concerning their property until they received the said notice.

VI. The Bank sold . . . 167,900[ ] units of [Cedar Fair stock] without any authority granted by the terms of the contract and contrary to the wishes of the Kinzels.

VII. The Bank never made any demand upon [the Kinzels] for the repayment of any portion of the loan. A demand is required under Clause 5 of the LMA [Agreement] before [Defendants] can liquidate collateral.

VIII. The [P]laintiffs never engaged in any conduct . . . which would constitute a remedy event, as defined by the LMA [Agreement] in Clause 7.

IX. As a matter of law, the Bank breached its contract with the [P]laintiffs when it sold collateral in a manner which did not comply with the terms of the LMA [Agreement] or the law.

X. [Merrill Lynch] sold the collateral in a manner which was contrary to any reasonable commercial standards.

(Doc. No. 116 at 5-6) (emphasis removed). They seek to amend their complaint to include all of these claims and arguments.

## MOTION TO AMEND

The Federal Rules do not expressly provide for a "motion to conform the pleadings to the evidence," as it is the responsibility of the parties, and not the court, to draft and file pleadings. The Rules, however, do authorize parties to amend their pleadings after filing; at this stage of the

3

litigation, Plaintiffs must have Defendants' consent or leave of the court. *See* Fed. R. Civ. P. 15 and 16. Plaintiffs' motion cites Rules 15(a) and (b) and 16(a) and (b). (Doc. No. 136). Rule 16(a) addresses the "[p]urposes of a pretrial conference," and is irrelevant to a request for leave to amend the pleadings. Rule 15(b), which deals with amending the pleadings during and after trial, likewise is irrelevant to a motion to amend the pleadings which is filed prior to trial. Rule 15(a), which governs amendments before trial, and Rule 16(b)(4), which requires "good cause and . . . the judge's consent" before a scheduling order limiting the time to amend the pleadings may be modified, set forth the appropriate standards for evaluating Plaintiffs' motion.

Rule 15(a) provides a party may amend its pleadings once as a matter of course within 21 days of serving it or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. Pro. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

Under Rule 16(b), a district court must issue a scheduling order limiting, *inter alia*, the time to amend the pleadings. Fed. R. Civ. Pro. 16(b)(3). The scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. Pro. 16(b)(4). In determining whether good cause exists to modify a scheduling order, a court should consider "the diligence of the party seeking the extension" and "whether the opposing party will suffer prejudice by virtue of the amendment."

4

*Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (*citing Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).  When a scheduling order deadline has passed, "a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."  *Leary*, 349 F.3d at 909.

In a case in which the parties so constantly and consistently disagree, it warrants mentioning when there is a topic on which the parties agree: there is a contract underlying the parties' dispute.  The LMA Agreement permitted Plaintiffs[2] to borrow up to $8 million in exchange for providing Defendants with a security interest in certain collateral.  (Doc. No. 1-1 at 10).

That contract also defined the term "Remedy Event."  The LMA Agreement states "[e]ach of the following shall constitute a 'Remedy Event': . . .  if the value of the financial assets in the Securities Account or other collateral is <u>in the sole judgment of Bank</u> insufficient [or] if the <u>Bank believes in good faith</u> that . . . the value of the collateral . . . is impaired . . . ."  (Id. at 5) (emphasis added).  The contract also sets out the steps Defendants were authorized to take upon the occurrence of a Remedy Event: "Without in any way detracting from the demand nature of this Agreement and the ability of the Bank to demand full payment of all debt and liabilities of the Borrower hereunder at any time and for any reason whatsoever, [the] Bank may, <u>in its sole discretion and without prior notice</u>, <u>exercise any or all of the following rights and remedies upon an occurrence of a Remedy Event</u>: . . . liquidate the Securities Account and/or other collateral for this Agreement and apply the proceeds to the LMA . . . ."  (Id. at 6) (emphasis added).

Plaintiffs argue "[t]he sole basis for the [D]efendants' motion [to strike] is that the court, in the past, before discovery was undertaken, ruled that the [P]laintiffs' complaint alleging breach of contract and conversion was dismissed apparently because it lacked specificity (i.e. pleadings didn't spell out the clauses of the contract which were breached)."  (Doc. No. 129 at 1).  As I noted above, Judge Carr dismissed five of the six counts in Plaintiffs' complaint on Defendants' Rule 12(b)(6)

---

[2]  Defendants assert Richard and Judith Kinzel, as individuals, are not proper parties in this litigation.  (*See, e.g.,* Doc. No. 113 at 3).  The Kinzels disagree.  (*See, e.g.,* Doc. No. 116 at 10-11).  This dispute is not relevant to my resolution of the two motions currently before me, and so I will not address that disagreement here.

5

motion, (Doc. No. 48), and I denied Plaintiffs' motions for reconsideration and for leave to file a third amended complaint, (Doc. No. 97).

Plaintiffs do not specify which of these orders contain the lack-of-specificity rulings Plaintiffs allege the Court made. It does not appear this merely was an oversight, because the alleged rulings simply do not exist. Judge Carr ruled "[t]he Agreement explicitly states that the determination of the Maintenance Requirement (a remedy-triggering event), and any subsequent sale of collateral, was in the sole discretion of [D]efendants," and that Plaintiffs could not establish a claim for conversion because (1) Defendants properly held the stock as collateral, (2) Plaintiffs did not allege they made a demand for the return of their stock, and (3) Plaintiffs had no basis for such a demand until they paid off the loan. (Doc. No. 48 at 5, 7). I ruled Ohio law prohibited Plaintiffs' conversion claim because the factual basis for that claim stems from contractual duties, and Plaintiffs cannot amend their complaint to present a breach of contract claim because such a claim could not survive a motion to dismiss. (Doc. No. 97 at 5-6). I concluded Plaintiffs' lengthy proposed third amended complaint would be futile not because the factual allegations lacked specificity, but because they could not prevail as a matter of law. Plaintiffs agreed to a contract which permitted Merrill Lynch to determine, in its sole discretion, at what point the value of the collateral was insufficient, and then permitted Merrill Lynch, in its sole discretion and without providing notice or issuing a demand, to liquidate the collateral securing the loan. (Doc. No. 1-1 at 5-6). Plaintiffs could not previously, and may not now, amend their complaint to include breach of contract claims because the conduct in which they allege Merrill Lynch employees engaged conforms to the language of the contract.

Despite Plaintiffs' insistence, a violation of "the good faith doctrine" is not a breach of contract. (*See, e.g.,* Doc. No. 129 at 7). Rather, the covenant of good faith and fair dealing requires a party to "exercise express rights awarded under a contract reasonably and in good faith." *Markham v. Bradley*, 173 P.3d 865, 872 (Utah Ct. App. 2007) (*quoting Leigh Furniture & Carpet Co. v. Isom*, 657

6

P.2d 293, 311 (Utah 1982)). The covenant of good faith and fair dealing, "[a]s distinguished from a contract's express terms, . . . is based on judicially recognized duties not found within the four corners of the contract." *Markham*, 173 P.3d at 871. Both Judge Carr and I already ruled Plaintiffs could proceed with a claim for breach of the implied covenant of good faith. (*See* Doc. No. 48 at 5 and Doc. No. 97 at 6). The covenant of good faith and fair dealing does not create new contractual duties. Instead, it regulates a party's performance of contractual rights and duties.

Plaintiffs also "allege that [Merrill Lynch] took $100,000 from them by improperly crediting their account" and failing to credit Plaintiffs' account. (Doc. No. 129 at 5; Doc. No. 129-2 at 3). Plaintiffs assert Defendants have not offered any explanation for this discrepancy, and argues "[t]his allegation constitutes bad faith, breach of contract, and conversion." (Doc. No. 129 at 6). Plaintiffs may proceed only with a limited negligent breach of contract claim for Defendants' failure to properly credit the payment. Ohio law does not permit a party to bring a tort claim for the breach of a contractual duty, and so Plaintiffs may not proceed with tort claims for bad faith or conversion. *See, e.g., Schwartz v. Bank One,* , 619 N.E.2d 10, 13 (Ohio Ct. App. 1992) ("Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." (*citing Ketcham v. Miller*, 136 N.E. 145, 146 (Ohio 1922))). Moreover, this claim differs from the duty of good faith and fair dealing because in it, Plaintiffs allege Defendants breached their duty to credit payments made against the balance of the LMA.

**MOTION TO STRIKE**

Defendants move to strike Plantiffs' motion for summary judgment, claiming it "is wholly improper because it seeks summary judgment rulings on alleged breach of contract claims that have been previously dismissed from this lawsuit." (Doc. No. 120 at 1). As Plaintiffs note, however, Defendants do not specifically address any of the ten issues Plaintiffs raised. Defendants' approach is particularly problematic with respect to Plaintiffs' Issues II and X, as Defendants separately moved for summary judgment on these issues. (*See* Doc. No. 113 at 3).

7

Rule 56(a) states a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court generally should not grant summary judgment merely because there is no genuine dispute of material fact. Rather, the rule also requires that the court conclude "the movant is entitled to judgment as a matter of law." *See* 11 *Moore's Federal Practice,* § 56.02[2] (Matthew Bender 3d ed.); *see also Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2nd Cir. 1980) ("summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation").

Plaintiffs seek summary judgment on seven issues related to the breach, or non-breach, of the LMA Agreement. (Doc. No. 116 at 5-6 (Issues I, IV, V, VI, VII, VIII, IX)). As a matter of law, Plaintiffs are not entitled to summary judgment on any of these issues because Defendants' conduct conformed to the express language of the contract.

In Issue I, Plaintiffs assert there is no evidence they breached the LMA Agreement. Whether or not Plaintiffs breached the Agreement is immaterial. The LMA Agreement explicitly permitted Merrill Lynch to determine "in its sole judgment" whether the collateral was insufficient to secure the loan and, if Merrill Lynch reached this conclusion, permitted it to liquidate the collateral and apply the proceeds to the LMA. (Doc. No. 1-1 at 5-6).

In Issue IV, Plaintiffs assert Defendants sold the collateral without providing them notice and contrary to Plaintiffs' "specific order." (Doc. No. 116 at 5). The express terms of the LMA Agreement do not provide Plaintiffs with a legal right under either circumstance. Plaintiffs waived "the right to require [the] Bank to . . . give any other notices . . . ." (Doc. No. 1-1 at 6). The LMA Agreement also gave Defendants "sole discretion" concerning liquidation of the pledged collateral. (Id.).

In Issue V, Plaintiffs assert Defendants did not deliver a notice of exclusive control over the Securities Account before liquidating the collateral. Plaintiffs misrepresent the language of the

8

contract.  The LMA Agreement did not provide Plaintiffs with the "right under the contract to control all transactions concerning [the Securities Account] until they received the said notice." (Doc. No. 116 at 5).  Rather, the LMA Agreement states "[the] Bank has ultimate control over all instructions made with respect to the Securities Account and if there is a conflict between the instructions Bank and Pledgor give . . . with respect to the Securities Account, Bank's instructions will prevail."  (Doc. No. 1-1 at 4).  "If the Securities Account is managed by a trustee of a trust," the Notice of Exclusive Control permitted Merrill Lynch "in its sole discretion [to] elect to terminate the ability of the trustee . . . to execute transactions in the Securities Account."  (Id.).  After pledging collateral in support of the loan they received, Plaintiffs no longer had "the exclusive right to trade the stock . . . ."  (Doc. No. 116 at 5).  Under the LMA Agreement, Defendants had "ultimate control" over the collateral, whether or not they issued a Notice of Exclusive Control.  (Doc. No. 1-1 at 4).

In Issue VI, Plaintiffs assert the LMA Agreement did not permit Defendants to sell the collateral when Defendants did not issue a demand for payment or provide a notice of exclusive control, and Plaintiffs did not breach the contract.  I already have disposed of the latter two contentions immediately above.  As I also noted above, the LMA Agreement permitted Defendants to liquidate the collateral if they determined, in their sole discretion, that the value of the collateral was insufficient.  The contract did not require Defendants to issue a demand.  Clause 5 of the contract is permissive; it states Merrill Lynch "may" issue a demand for payment. (Doc. No. 1-1 at 3).  This is underscored in Clause 7, where Plaintiffs "waive[d] the right to require [the] Bank to . . . make any demands."  (Id. at 6).  The explicit language of the LMA Agreement refutes Plaintiffs' contentions.

In Issue VII, Plaintiffs again assert Defendants failed to issue a demand for payment.  The LMA Agreement did not require Defendants to issue a demand before liquidating the collateral.

9

In Issue VIII, Plaintiffs claim they "never engaged in any conduct[ ] which would constitute a remedy event[ ] as defined by the LMA [Agreement] in Clause 7." (Doc. No. 116 at 6) (emphasis removed).  The LMA Agreement did not require Plaintiffs to take or fail to take any action before Merrill Lynch could liquidate the collateral, as the LMA Agreement gave Merrill Lynch "sole discretion" to determine whether the value of the collateral was sufficient to secure the loan.

Finally, in Issue IX, Plaintiffs summarize their earlier claims by reiterating their contention that Defendants breached the LMA Agreement by liquidating the collateral.  Plaintiffs are incorrect.

As I have noted on numerous occasions, Plaintiffs may proceed with their claim that Defendants breached the implied covenant of good faith and fair dealing.  Thus, Plaintiffs may continue to seek summary judgment on Issues II and X.  Further, the question of whether or not Richard and Judith Kinzel, as individuals, have standing to bring suit against these Defendants – Issue III – is proper for summary judgment.

Defendants also requested an award of fees and costs incurred in preparing and filing its motion to strike Plaintiffs' summary judgment motion. (Doc. No. 120 at 5).  Defendants' request is denied.  Defendants cannot reasonably believe Plaintiffs' motion was "wholly improper and frivolous" because Defendants also filed for summary judgment on the breach of duty of good faith and fair dealing claim and on the issue of whether the Kinzels as individuals have standing. (Doc. No. 113 at 3).

## Conclusion

For the reasons stated above,

(1) Plaintiffs' motion to conform the pleadings to the evidence, (Doc. No. 130), is denied as moot.

(2) Plaintiffs' amended motion, (Doc. No. 136), is granted in part and denied in part.  Plaintiffs may proceed with a claim for negligent breach of contract with respect to Defendants'

10

alleged failure to properly credit the $100,000 payment only. Plaintiffs also may continue to pursue their claim for breach of the duty of good faith and fair dealing.

(3) Defendants' motion to strike Plaintiffs' motion for summary judgment, (Doc. No. 120), is granted in part and denied in part. As a matter of law, Plaintiffs are not entitled to summary judgment on Issues I, IV, V, VI, VII, VIII, or IX. Plaintiffs' summary judgment motion shall stand with respect to Issues II, III, and X.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

11