UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Richard L. Kinzel, et al.,  Case No. 3:10cv2169

    Plaintiffs

  v.  MEMORANDUM OPINION
                                                                             & ORDER

Bank of America, et al.,

    Defendants

## I.    INTRODUCTION

Before me are the motions of Plaintiffs Richard and Judith Kinzel, (Doc. No. 115), and Defendants Bank of America, et al., (Doc. No. 113), for summary judgment. The briefing is complete for both motions. For the reasons stated below, Plaintiffs' motion is granted in part and denied in part, and Defendants' motion is denied.

## II.    BACKGROUND

On April 15, 2008, Plaintiffs Richard and Judith Kinzel, as trustees of revocable trusts titled in their names, (the "Kinzel Trusts") entered into a Loan Management Account Agreement (the "LMA Agreement") with Merrill Lynch Bank U.S.A. in order to exercise certain stock options and pay attendant tax consequences. (*See* Doc. No. 1-1). Among other things, the LMA Agreement required the Kinzel Trusts to pledge collateral in support of the loan and gave Merrill Lynch discretion to liquidate the collateral if Merrill Lynch determined the value of the collateral was insufficient to secure the loan. (Id. at 1, 4-6). The collateral consisted primarily of shares of Cedar Fair stock.

While the LMA Agreement does not contain a payment schedule, Plaintiffs began paying back the loan shortly after executing the LMA Agreement; Plaintiffs also complied with numerous requests from Defendants to pay down the loan further and to submit additional collateral to secure the remaining balance of the loan. Between the initiation of the LMA Agreement on April 15, 2008, and March 2, 2009, Plaintiffs reduced the balance of the loan from $7,700,000 to approximately $3,400,000 and also pledged additional securities as collateral for the loan. (Doc. No. 109-2 at 60). Despite these efforts, Defendants determined the collateral was insufficient to support the loan balance and, on March 3, 2009, liquidated 167,900 shares of Cedar Fair stock. Plaintiffs filed suit, alleging Defendants violated Plaintiffs' rights under the LMA Agreement. The sole remaining claim at issue here is Plaintiffs' allegation that Defendants breached the covenant of good faith and fair dealing through their sale of the collateral securing the loan. (*See* Doc. No. 48, Doc. No. 141, Doc. No. 155).

### III. STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the nonmoving party bears the ultimate burden of proof at trial, the movant is entitled to summary judgment if the movant shows that the nonmoving party failed to present evidence "to support an essential element of his or her claim." *Celotex Corp v. Catrett,* 477 U.S. 317, 322-23 (1986).

If the movant satisfies this burden, the nonmoving party "must present specific facts setting forth a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The nonmoving party needs only to present evidence from which a reasonable jury could find in that party's favor. *Id.* at 251. "All of [that] evidence and any inferences that may be drawn from that evidence [must be viewed in a] . . . light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The nonmoving party, however, must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-

87. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson,* 477 U.S. at 247-48.

The party opposing the motion "must show she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir. 2009) (emphasis in original). Summary judgment shall be awarded "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317.

### IV. ANALYSIS

Both Plaintiffs and Defendants seek summary judgment on two issues. First, the parties dispute whether Richard and Judith Kinzel, as individuals, are parties to the LMA Agreement and thus entitled to maintain a claim for breach of the covenant of good faith and fair dealing under Utah law.[1] Plaintiffs have produced uncontroverted evidence that the Kinzels individually provided money and securities to pay down and collateralize the loan. (Doc. No. 117 at 4). I conclude that under the plain language of the LMA Agreement, the Kinzels as individuals are "other parties" to the contract and are entitled to bring suit.

Second, the parties dispute whether Defendants breached their duty of good faith and fair dealing when, and through the manner in which, they liquidated collateral securing the loan in order to reduce the loan balance. I conclude there is a genuine dispute of material fact as to this issue and therefore neither party is entitled to summary judgment.

### A. THE OTHER PARTIES CLAUSE

Section 2 of the LMA Agreement states "any person who is providing a lien and security interest in the Securities Accounts (defined below) and other collateral described below" is included

---

[1] The LMA Agreement provides that it "shall be governed by and interpreted under federal law and the internal laws of the State of Utah . . . ." (Doc. No. 1-1 at 9).

3

in the contractual definition of the "Pledgor" and is a party to the contract. (Doc. No. 1-1 at 1). The LMA Agreement further states:

> As security for the performance of Borrower's Obligations and those of any Guarantor and/or other Pledgor under this Agreement, Pledgor hereby assigns, transfers, grants and conveys to Bank a continuing, first priority lien and security interest in all of its right, title and interest in all of its securities accounts (collectively, the "Securities Account") (including all financial assets from time to time held in the Securities Account(s)) . . . that have been designated by Pledgor as the collateral for the LMA herein . . . as well as all of Pledgor's right, title and interest in and to all monies, debts, claims, securities, securities entitlements, financial assets, investment property and other property deposited by Pledgor with or owed or owing to Pledgor by Bank or any member of the Merrill Lynch Group.

(Doc. No. 1-1 at 4) (emphasis added).

Defendants' analysis of the "other parties" clause focuses solely on the Securities Accounts. They argue it is undisputed the Kinzel Trusts owned the three accounts identified in the LMA Agreement as Securities Accounts and also contend "all securities provided under the LMA flowed through those three accounts." (Doc. No. 113 at 21-22). While Plaintiffs do not contest the former argument, they argue the latter contention is both wrong and incomplete. (Doc. No. 148 at 3-4). I conclude Plaintiffs have established the absence of a genuine dispute of material fact on this issue.

Under Utah law, "[i]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Cent. Florida Inv., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 605 (Utah 2002). "In evaluating whether the plain language is ambiguous, [courts must] attempt to harmonize all of the contract's provisions and all of its terms." *Id.*

Section 2 of the LMA Agreement states that a non-signatory of the contract becomes an "other party" to the contract, and thus a "Pledgor," by "providing a lien and security interest in the Securities Account . . . and other collateral described below . . . ." (Doc. No. 1-1 at 1). This "other collateral" includes "all monies," "securities," "financial assets," and "other property deposited by Pledgor." (Id. at 4). Further, the LMA Agreement reaches "all financial assets from time to time held in the Securities [Accounts] . . . ." (Id.).

4

Richard Kinzel avers he and his wife spent "millions of dollars of their own resources to pay down the loan. Both . . . posted hundreds of thousands of additional individually owned units and stock . . . ." (Doc. No. 117 at 4). Defendants implicitly concede they were aware the Kinzels individually were transferring cash and pledging additional securities to prevent a liquidation of Cedar Fair units, but argue that ownership interest does not make the Kinzels "other parties" to the LMA Agreement because "all loan payments and pledged collateral flowed exclusively through [the] three Securities Accounts." (Doc. No. 145 at 4). Defendants' argument is not persuasive. First, Merrill Lynch's records reflect it accepted and processed loan payments from at least one account which was not listed as a Securities Account in the LMA Agreement. (*See, e.g.,* Doc. No. 109-2 at 55, 61). Second, Defendants' argument contradicts the plain language of the LMA Agreement. At the very least, under the terms of the contract, when Merrill Lynch transferred the Kinzels' personal "monies," "securities," and "financial assets" into the three accounts designated in the LMA Agreement, it made the Kinzels as individuals "other parties" to the LMA Agreement who are entitled to enforce relevant legal rights with respect to the contract. Plaintiffs are entitled to summary judgment on this issue as a matter of law.

    **B.    COVENANT OF GOOD FAITH AND FAIR DEALING**

Utah law recognizes the covenant of good faith and fair dealing as arising in every contract. "Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004) (*citing St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991)). "[W]here one party has discretion over another according to the terms of the contract, that party must act with good faith and fair dealing." *Smith v. Grand Canyon Expedition Co.*, 84 P.3d 1154, 1159 (Utah 2003); *see also Olympus Hills Shopping Ctr. Ltd. v. Smiths's Food and Drug Ctrs. Inc.*, 889 P.2d 445, 450 (Utah 1994) ("a party must exercise express rights awarded under a contract reasonably and in good faith"). The "function" of the covenant of good

5

faith and fair dealing is to infer "as a term of every contract a duty to perform in the good faith manner that the parties surely would have agreed to if they had foreseen and addressed the circumstance giving rise to their dispute." *Young Living Essential Oils LLC v. Marin*, 266 P.3d 814, 816 (Utah 2011); *see also id.* (noting "parties to a contract cannot feasibly anticipate all possible contingencies nor reasonably resolve how they would address them in writing"). "[T]he degree to which a party to a contract may invoke the protections of the covenant turns on the extent to which the contracting parties have defined their expectations and imposed limitations on the exercise of discretion through express contract terms." *Smith*, 84 P.3d at 1159.

In *Smith*, the Utah Supreme Court confronted a dispute between the parties regarding Grand Canyon Expedition Co.'s exercise of its discretion in determining the net book value of the company for the purpose of buying back stock Smith owned in the company. The Utah Supreme Court noted the parties "bargained for" the use of generally accepted accounting principles in conducting the net book valuation. *Smith*, 84 P.3d at 1160. In affirming the trial court's grant of summary judgment to Grand Canyon Expedition on Smith's claim that Grand Canyon Expedition breached the covenant of good faith and fair dealing, the Utah Supreme Court reasoned that where "the express contract term defines and limits discretionary performance, the implied covenant has little, if any, utility." *Id.*

Here, the core of the parties' dispute regarding the covenant of good faith and fair dealing rests upon Defendants' exercise of their "sole judgment" in determining the value of the assets securing the LMA was insufficient and of their "sole discretion" in liquidating shares of Cedar Fair stock and applying the proceeds of that sale to the loan balance. (*See* Doc. No. 1-1 at 5-6). The parties did not bargain for any limits on Defendants' discretionary performance and so the operative question is whether Defendants exercised their discretion "reasonably and in good faith." *Olympus Hills*, 889 P.2d at 450. Generally, this question is "a factual issue . . . inappropriate for decision as a

6

matter of law." *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 968 (Utah 2008) (*quoting Republic Group, Inc. v. Won-Door Corp.*, 883 P.2d 295, 291 (Utah Ct. App. 1994)).

Defendants argue they reasonably exercised their discretion because (1) Plaintiffs knowingly assumed the risk that Defendants would liquidate collateral Plaintiffs pledged to secure the loan, (2) the individual share price of Cedar Fair stock "dramatically decreased over the life of the LMA," and (3) Plaintiffs knew Merrill Lynch would require "immediate repayment of the entire loan" if the price of Cedar Fair stock dropped below $7 per share. (Doc. No. 113 at 15-18). Defendants contend they are entitled to summary judgment because "a partial liquidation of Cedar Fair Units was or should have been within the reasonable contemplation of Plaintiffs." (Id. at 19). Plaintiffs assert Defendants' conduct was unreasonable because the value of their pledged collateral substantially exceeded the loan-to-maintenance value ratio Merrill Lynch had established for the LMA and that Merrill Lynch knew Plaintiffs had the resources to pay off the loan within less than two months without liquidating any shares of Cedar Fair. I will address each party's arguments in turn.

Defendants' argument is unpersuasive, as it incorrectly focuses on the prospect of liquidation rather than the manner in which it actually occurred and ignores material facts, including the parties' course of conduct[2] in the months leading up to the liquidation. As Defendants admit, they "reduced the loan to maintenance ratio," accepted cash payments and additional units of Cedar Fair and other securities as collateral, and, perhaps most importantly, adjusted the floor price for the Cedar Fair units "on several occasions from $17.50 to $9 to $7 [per share]," <u>after</u> the share price fell below the designated price floor. (Doc. No. 113 at 5-7, 16). Defendants do not explain why it was reasonable to begin liquidating Plaintiffs' collateral to achieve "immediate repayment of the entire

---

[2] In *Young Living Essential Oils LLC v. Marin*, 266 P.3d 814 (Utah 2011), the Utah Supreme Court affirmed the trial court's rejection of Marin's evidence of the parties' "course of dealing" as insufficient to establish, under the covenant of good faith and fair dealing, that Young Living had obligated itself to provide certain marketing materials to Marin. *Id.* at 819. Unlike in *Young Living*, here, evidence of the parties' course of conduct does not establish a new contractual requirement. Instead, it informs the evaluation of whether Defendants' discretionary actions were reasonable and consonant with the parties' "purpose, intentions, and expectations." *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004).

7

loan" once the share price dropped $0.01 below the floor price, when they previously reset the floor price after it dropped $3.89 or $1.16 below the stated price per share. (*See* Doc. No. 113 at 3, 5; Doc. No. 113-1 at 15-16; Doc. No. 113-12 at 24).

Further, Defendants have not proven their determination that the pledged collateral was insufficient to support the loan solely because the individual share price dropped below $7 a share was reasonable in light of the total value of the pledged collateral. The LMA Agreement does not specify a valuation method for determining when the value of the collateral fell too low to adequately secure the loan and the factual question concerning the reasonableness of Defendants' choice of one method over another is one for the trier of fact. *Oman,* 194 P.3d at 968 (determination of whether a party breached the covenant of good faith and fair dealing "is a factual issue, generally inappropriate for decision as a matter of law") (internal quotations omitted); s*ee also Eggett*, 94 P.3d at 198 ("Broadly speaking, the more leeway a party has under the terms of the contract, the more contracting parties may invoke the protections of the covenant of good faith and fair dealing in the exercise of that discretion.").

Plaintiffs also are not entitled to summary judgment because they cannot show as a matter of law that it was unreasonable for Defendants to determine they were unwilling to make further accommodations before liquidating pledged collateral to reduce the balance of the loan. Plaintiffs did not bargain for express restrictions on Defendants' discretion with regard to the collateral and they cannot establish the absence of a genuine dispute of material fact regarding whether Defendants' exercise of their discretion was unreasonable. *Cf. Malibu Inv. Co. v. Sparks*, 996 P.2d 1043, 1048 (Utah 2000) (A court may not "interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves. Nor [may it] construe the covenant to establish new, independent rights or duties not agreed upon by the parties.") (internal quotations and citations omitted). There remain genuine issues of material fact from which a finder of fact reasonably could reach a verdict in favor of either party. Therefore

8

neither Plaintiffs nor Defendants are entitled to summary judgment on Plaintiffs' claim for breach of the covenant of good faith and fair dealing.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment, (Doc. No. 115), is granted in part and denied in part. Defendants' motion for summary judgment, (Doc. No. 113), is denied. As a matter of law, Richard and Judith Kinzel, as individuals, are parties to the LMA Agreement through the "other parties" clause. There remain genuine issues of material fact as to whether Defendants violated the covenant of good faith and fair dealing in exercising their discretion to liquidate collateral securing Plaintiffs' loan.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge